1

2

3

4

5

6

7                            UNITED STATES DISTRICT COURT

8                            EASTERN DISTRICT OF CALIFORNIA

9

10   CHANTELL GOSZTYLA,                    Case No.   1:22-cv-00610-KES-EPG (PC)

11               Plaintiff,                FINDINGS AND RECOMMENDATIONS,
                                           RECOMMENDING THAT:
12        v.
                                           PLAINTIFF'S MOTION TO EXCLUDE DR.
13   WEI GU, et al.,                       FEINBERG'S EXPERT OPINION BE DENIED;
                                           and
14               Defendants.
                                           DEFENDANT GU'S MOTION FOR SUMMARY
15                                         JUDGMENT BE GRANTED.

16                                         (ECF No. 57; ECF No. 64)

17                                         OBJECTIONS, IF ANY, DUE WITHIN
                                           THIRTY DAYS
18

19        Plaintiff Chantell Gosztyla is a state prisoner proceeding *pro se* and *in forma pauperis* in

20   this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claim that

21   her primary care provider, Defendant Wei Gu, M.D. ("Dr. Gu"), was deliberately indifferent to

22   her serious medical need for chiropractic manipulative therapy in violation of the Eighth

23   Amendment. (ECF No. 12). Plaintiff sues Dr. Gu in his official and individual capacities, and

24   seeks monetary damages as well as prospective injunctive relief. (Id.; ECF No. 11).

25        Before the Court is Dr. Gu's motion for summary judgment (ECF No. 57), which is now

26   fully briefed and ripe for consideration. Also before the Court is Plaintiff's motion to exclude Dr.

27   B. Feinberg, M.D.'s ("Dr. Feinberg") expert opinion in support of Dr. Gu's motion for summary

28   judgment, which is also ripe for consideration. (ECF No. 64 at 46–61).

                                             1

As explained below, the Court recommends denying Plaintiff's motion to exclude Dr. Feinberg's expert opinion and granting Dr. Gu's motion for summary judgment.

## I.     BACKGROUND

Plaintiff is presently incarcerated at Central California Women's Facility ("CCWF"). On May 23, 2022, she filed this lawsuit against Dr. Gu, who was one of her medical providers at CCWF, and four other defendants. (ECF No. 1; ECF No. 12). The operative complaint is Plaintiff's verified first amended complaint, filed October 13, 2022.[1] (ECF No. 11).

In her verified first amended complaint, Plaintiff alleges as follows with respect to her Eighth Amendment deliberate indifference claim against Dr. Gu. In 2019, Plaintiff began seeking medical treatment at CCWF for subluxation of the fourth lateral rib. (ECF No. 11 at 5). When she saw Dr. Gu, he allegedly told her "he had never heard of an 'unstable' rib." (Id.) Dr. Gu also allegedly refused to review Plaintiff's past medical records, which she asserts would have shown that she was diagnosed with subluxation of the fourth right lateral rib following a January 2008 motor vehicle accident, and that since then, she had received chiropractic manipulative therapy to "[a]lleviate chronic pain [and] reestablish rib placement so that physical therapy would be successful in stabelizing [sic] [the] rib." (Id. at 5–6).

Plaintiff alleges that the "only way to properly treat" the subluxation of her fourth lateral right rib is by chiropractic manipulative therapy, but that as of the date of filing her first amended complaint, Dr. Gu has refused to refer her to a chiropractor or review her pre-incarceration medical records. (Id. at 6–7). Plaintiff maintains that Dr. Gu's refusal to do so constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Id.)

After screening Plaintiff's first amended complaint, the District Judge ordered that "[t]his case shall proceed on Plaintiff's Eighth Amendment claim against Defendant Gu, in his individual and official capacities, for deliberate indifference to Plaintiff's serious medical need, and "[a]ll other claims and Defendants are dismissed." (ECF No. 13).

---

[1] The first amended complaint includes a declaration signed by Plaintiff under penalty of perjury attesting to the accuracy of her allegations. (See ECF No. 11 at 9). As such, the Court treats it as a verified complaint, which may be considered as evidence for purposes of summary judgment. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 . . . [if it is] based on personal knowledge and set[s] forth specific facts admissible in evidence.").

## II.    THE PARTIES' MOTIONS

### A.    Dr. Gu's Motion for Summary Judgment[2]

On November 12, 2024, Dr. Gu moved for summary judgment on Plaintiff's Eighth Amendment claim against him. (ECF No. 57). In support of his motion for summary judgment and accompanying memorandum, Dr. Gu submitted the following: (1) a statement of undisputed facts, (2) his own declaration, (3) the declarations of Dr. Feinberg and D. Myers, and (4) Plaintiff's medical records.[3] (See ECF Nos. 57-1 to 57-7).

Dr. Feinberg is the chief medical consultant for the California Correctional Health Care Services ("CCHCS") Office of Legal Affairs; his declaration provides his "medical-expert opinion as to [Plaintiff's] claims" after review of Plaintiff's first amended complaint and her medical records kept by CCHCS. (See Declaration of Dr. B. Feinberg, M.D. ("Dr. Feinberg Decl."), ECF No. 57-3 at ¶¶ 3, 7–8). D. Myers is a CCWF employee who reviewed Plaintiff's inmate records in order to provide the date of her transfer from county jail to CCWF. (See Declaration of D. Myers ("Myers Decl."), ECF No. 57-7).

After the Court extended the time for Plaintiff to respond, Plaintiff filed a response in opposition to Dr. Gu's summary judgment motion on January 2, 2025. (ECF No. 64 at 1–27). With her response, Plaintiff submitted the following: (1) a response to Dr. Gu's statement of facts (id. at 319–35); (2) her own declaration (id. at 28–45); (3) her pre-incarceration chiropractic treatment records and billing statements (id. at 62–98, 259); (4) her medical records while confined at CCWF (id. at 99–218); (5) records of her physical therapy sessions at CCWF (id. at 261–318); (6) an excerpt from a dictionary that defines the word "subluxation" (id. at 257–58, 260); and (7) her health care grievance records and requests for reasonable accommodations (id. at 219–56).

On January 16, 2025, Dr. Gu filed a reply in support of his summary judgment motion. (ECF No. 67). With his reply, Dr. Gu submitted the following: (1) a reply statement of undisputed

---

[2] Dr. Gu's motion for summary judgment also included a warning to Plaintiff consistent with Rand v. Rowland, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc). (See ECF No. 57-8).

[3] The Court notes that Plaintiff's medical records were attached as exhibits to Dr. Feinberg's declaration. (See ECF No. 57-5). Dr. Gu avers in his declaration that he reviewed the medical records attached to Dr. Feinberg's declaration and they are "true and correct copies that accurately reflect [his] notes and files concerning [Plaintiff] during the time she was [his] patient at CCWF." (Declaration of Dr. Gu ("Dr. Gu Decl."), ECF No. 57-6 at ¶ 6).

1  facts (ECF No. 67-1); (2) objections to some of the evidence Plaintiff submitted with her response

2  (ECF No. 67-3); (3) the declaration of CCWF chief medical executive Dr. Akinwumi Ola, M.D.

3  (ECF Nos. 67-4, 67-5); and (4) the declaration of Dr. Gu's attorney with supporting exhibits

4  including additional medical records (ECF Nos. 67-6, 67-7).

5          **B.    Plaintiff's Motion to Exclude Dr. Feinberg's Expert Opinion**[4]

6          With her response to Dr. Gu's summary judgment motion, Plaintiff also filed a motion

7  seeking to exclude Dr. Feinberg's expert opinion. (ECF No. 64 at 46–61). Dr. Gu responded to

8  Plaintiff's motion on January 16, 2025. (ECF No. 67-2). To date, Plaintiff has not filed a reply.

9  **III.    ANALYSIS OF PLAINTIFF'S MOTION TO EXCLUDE DR. FEINBERG'S
        EXPERT OPINION**

10         Because it presents an evidentiary issue, the Court first addresses Plaintiff's motion to

11  exclude Dr. Feinberg's medical expert opinion before turning to Dr. Gu's summary judgment

12  motion.

13         Plaintiff argues that the Court should exclude Dr. Feinberg's expert opinion in his

14  declaration because it is based on a "misrepresentation of [the] facts" and "selective bias." (ECF

15  No. 64 at 46). She asserts that Dr. Feinberg's declaration is "misleading, vague, subjective, and

16  blatantly [sic] wrong in many aspects." (Id.) In addition, Plaintiff asserts that it is apparent to her

17  that Dr. Feinberg is not "well-versed in chiropractic care and/or research methods." (Id. at 47,

18  61). Plaintiff then points to several instances in the declaration that purportedly support her

19  position. (Id. at 47–61). In response, Dr. Gu argues that Plaintiff's motion lacks foundation and is

20  based on inadmissible lay opinion. (ECF No. 67-2).

21         An "[e]xpert opinion is admissible and may [be considered at the] summary judgment

22  [stage] if it appears the affiant is competent to give an expert opinion and the factual basis for the

23  opinion is stated in the affidavit, even though the underlying factual details and reasoning upon

24  which the opinion is based are not." Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir.

25  1985); see also Stephens v. Union Pac. R.R. Co., 935 F.3d 852, 856 (9th Cir. 2019) ("Federal

26  Rule of Evidence 702(b) permits the introduction of expert testimony only if 'the testimony is

27  ───────────────

   [4] Plaintiff misspelled Dr. Feinberg's name throughout her motion and other briefing, which the Court has
   corrected without identifying each occurrence.

28

1    based on sufficient facts or data.'").

2        The Court finds that Dr. Feinberg is qualified to give a medical expert opinion based on

3    his training and experience. Dr. Feinberg states in his declaration that he graduated from

4    University of California at San Francisco School of Medicine in 1994, is licensed to practice

5    medicine in California, is board-certified in internal medicine with more than twenty-five years of

6    experience, and has practiced within the correctional health care field since 2010. (Dr. Feinberg

7    Decl. ¶¶ 2–4). Dr. Feinberg has also provided the factual basis for his expert opinion. Dr.

8    Feinberg specifically explains that his opinion regarding the treatment Dr. Gu provided to

9    Plaintiff is based on his medical training and expertise, a 2018 article from the journal

10   Chiropractic & Manual Therapies, and his review of Plaintiff's first amended complaint and her

11   prison medical records kept by CCHCS. (Id. at ¶¶ 8, 30). Dr. Feinberg has also attached the

     medical records he found pertinent to his declaration for the Court's review. (See ECF No. 57-5).

12       Upon review, the Court concludes that Plaintiff has not presented any basis warranting the

13   exclusion of Dr. Feinberg's declaration at the summary judgment stage. Although Plaintiff

14   disagrees with Dr. Feinberg's characterization of her medical records and his reliance on the 2018

15   journal article, such disagreement provides no basis to exclude Dr. Feinberg's declaration. At

16   most, Plaintiff's arguments amount to a challenge to the weight to be assigned to Dr. Feinberg's

17   medical opinion rather than a challenge to its admissibility. Ultimately, Plaintiff's challenge to the

18   "facts and data underlying [Dr. Feinberg's] opinion and his method of arriving at it" is fodder for

19   cross-examination at trial. Bieghler v. Kleppe, 633 F.2d 531, 534 (9th Cir. 1980); see Children's

20   Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) ("As a general rule, the

21   factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility,

22   and it is up to the opposing party to examine the factual basis for the opinion in cross-

23   examination.").

24       Therefore, the Court recommends denying Plaintiff's motion to exclude Dr. Feinberg's

25   expert opinion.

26   \\\

27   \\\

28   \\\

                                                     5

1    **IV.    ANALYSIS OF DR. GU'S MOTION FOR SUMMARY JUDGMENT**

2        **A.    Applicable Legal Standards**

3            **i.    Summary Judgment**

4        A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a).

5    Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any

6    material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

7    Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute

8    about material facts, summary judgment will not be granted."). A party asserting that a fact

9    cannot be disputed must support the assertion by "citing to particular parts of materials in the

10   record, including depositions, documents, electronically stored information, affidavits or

11   declarations, stipulations (including those made for purposes of the motion only), admissions,

12   interrogatory answers, or other materials, or showing that the materials cited do not establish the

13   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

14   evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

15       A party moving for summary judgment "bears the initial responsibility of informing the

16   district court of the basis for its motion, and identifying those portions of 'the pleadings,

17   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18   any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex

19   Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-

20   moving party bears the burden of proof at trial, the moving party need only prove that there is an

21   absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627

22   F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-

23   moving party to designate specific facts demonstrating the existence of genuine issues for trial,"

24   which is not a light burden, the party "must come forth with evidence from which a jury could

25   reasonably render a verdict in the non-moving party's favor." Id.; see Anderson v. Liberty Lobby,

26   Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the

27   plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

28   find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the

     nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

1    Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory

2    allegations unsupported by factual data." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

3        In reviewing the evidence at the summary judgment stage, the Court "must draw all

4    reasonable inferences in the light most favorable to the nonmoving party." <u>Comite de Jornaleros</u>

5    <u>de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011). It need only

6    draw inferences, however, where there is "evidence in the record . . . from which a reasonable

7    inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact.

8    <u>Celotex</u>, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant

9    is to be believed." <u>Anderson</u>, 477 U.S. at 255. Further, the Court may consider other materials in

10    the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen</u>

11    <u>v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

12        "While courts should construe liberally motion papers and pleadings filed by *pro se*

13    inmates and should avoid applying summary judgment rules strictly, the *pro se* prisoner must

14    nevertheless identify or submit some competent evidence that would preclude summary

15    judgment." <u>Wilkins v. Barber</u>, No. 23-15511, 2025 WL 687961, at *1 (9th Cir. Mar. 4, 2025)

      (internal citations and quotation marks omitted).

16            **ii.   Deliberate Indifference to Serious Medical Needs**

17        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

18    must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091,

19    1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). This requires Plaintiff

20    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

21    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

22    (2) that "the defendant's response to the need was deliberately indifferent." <u>Id.</u> (quoting

23    <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (citation and internal quotations

24    marks omitted), overruled on other grounds by <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th

25    Cir. 1997) (en banc)).

26        The "second prong—defendant's response to the need was deliberately indifferent—is

27    satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

28    medical need and (b) harm caused by the indifference." <u>Jett</u>, 439 F.3d at 1096. A difference of

                                            7

opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, "a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

### B.    Summary of the Parties' Arguments

Dr. Gu raises three primary arguments in his summary judgment motion. The Court briefly summarizes each argument and Plaintiff's response.

First, Dr. Gu argues that Plaintiff's Eighth Amendment claim against him in his official capacity is barred by the Eleventh Amendment. (ECF No. 57-1 at 15–16; ECF No. 67 at 2).

In her response, Plaintiff concedes that the Eleventh Amendment bars her official capacity claim for monetary damages. (ECF No. 64 at 11–12).

Second, Dr. Gu argues that he is entitled to judgment as a matter of law on the merits of Plaintiff's Eighth Amendment claim because he provided medically acceptable treatment under the circumstances and did not consciously disregard an excessive risk to Plaintiff's health. (ECF No. 57-1 at 17–22). Dr. Gu asserts that the undisputed evidence shows he did not "consciously disregard or purposefully ignore [Plaintiff's] complaints of rib pain, but reviewed her medical records, examined her, and advised that her condition was chronic and could be managed with home exercise and pain medication." (See id. at 23). Dr. Gu additionally asserts that he is entitled to qualified immunity. (Id. at 22–23).

In response to Dr. Gu's second argument, Plaintiff argues that summary judgment is improper as there are triable issues of fact regarding her Eighth Amendment deliberate indifference claim. (ECF No. 64 at 12–19). She specifically asserts that: (1) the evidence shows Dr. Gu failed to provide her medically necessary treatment for chronic rib pain or refer her to a chiropractor; (2) Dr. Gu improperly refused to review her pre-incarceration chiropractic treatment records; (3) Dr. Gu's failure to provide adequate medical treatment exacerbated her medical

condition; (4) Dr. Gu had a duty to refer her to a chiropractor under Cal. Code of Regs., Title 15, Section 3999.200, which she asserts does not exclude chiropractic services; and (5) other medical providers who saw Plaintiff prior and subsequent to Dr. Gu treated her rib pain, and one subsequent doctor placed a request for service for Plaintiff to be seen by a chiropractor. (Id.) Plaintiff further argues that Dr. Gu is not entitled to qualified immunity. (Id.)

Third, Dr. Gu argues that Plaintiff is not entitled to punitive damages because she has failed to demonstrate that he acted with "the type of evil motive or intent or reckless and callous indifference." (ECF No. 57 at 23).

In response, Plaintiff argues that monetary damages are appropriate based on the difficulties she encountered while seeking medical treatment from Dr. Gu for subluxation of her rib. (ECF No. 64 at 19–25). She asserts that Dr. Gu's actions, or lack thereof, have "forced [her] to live the past four years incarcerated in wonton and unnecessary pain." (Id. at 25).

## C.   Summary Judgment Evidence[5]

### i.   Plaintiff's Medical History Prior to Incarceration at CCWF

Plaintiff states in her declaration that she was involved in a motor vehicle accident in January 2008, which she claims resulted in injuries including subluxation of her right rib and torn ligaments in her right shoulder.[6] (Declaration of Plaintiff ("Plaintiff's Decl."), ECF No. 64 at 29). Plaintiff was in a second motor vehicle accident in April 2009. (Id.) She underwent orthopedic surgery on her shoulder in August 2008. (Id.) And from 2008 until her arrest in 2018, Plaintiff states that she received chiropractic spinal manipulation therapy and physiotherapy. (Id. at 29–30).

After her arrest on March 9, 2018, Plaintiff was detained at the Sacramento County Main Jail. (Id. at 30). She was released to California Department of Corrections and Rehabilitation

---

[5] Except as otherwise noted, the facts are undisputed. Additionally, the Court notes that all citations are to the CM/ECF document number and page rather than any internal page numbers.

[6] Dr. Gu has lodged objections to several paragraphs in Plaintiff's declaration on the basis that they either lack foundation, are not relevant, contain inadmissible lay opinion testimony, or constitute inadmissible hearsay. (ECF No. 67-3 at 3–4). Dr. Gu lodged these objections in a cursory manner without identifying the specific information that constitutes the basis for each objection. Moreover, much of Plaintiff's declaration concerns events within her personal knowledge. The Court therefore overrules Dr. Gu's objections to Plaintiff's declaration. See Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) ("The [C]ourt is not inclined to comb through these documents, identify potential hearsay, and determine if an exception applies—all without guidance from the parties.").

("CDCR") custody and transferred to CCWF on May 16, 2019. (Id. at 30; see also Myers Decl. ¶ 4). At the time of transfer, the county jail sent a discharge summary to CCWF. (ECF No. 57-5 at 2). There was no mention of a rib disorder or rib pain in the discharge summary although Plaintiff avers in her declaration that she complained of rib pain and requested chiropractic care while in county jail.[7] (Pl. Decl. at 30).

Plaintiff has submitted some of her pre-incarceration chiropractic treatment records and billing statements with her summary judgment briefing.[8] (ECF No. 64 at 62–98). However, apart from a two-page fax (which the Court addresses later), (id. at 97–98), Plaintiff's chiropractic records are not part of her prison records at CCWF.

### ii. Plaintiff's Medical Treatment at CCWF[9]

From April 2020 to June 2022, Dr. Gu was one of Plaintiff's assigned medical providers at CCWF. (Declaration of Dr. Gu ("Dr. Gu Decl."), ECF No. 57-6 at ¶ 5). Because Plaintiff saw other providers before, during, and after this time period, the Court will summarize Plaintiff's medical treatment below in chronological order as follows: (1) from May 2019 to June 4, 2020, the date Plaintiff had her first appointment with Dr. Gu; (2) June 4, 2020 to May 5, 2022 – the time period when Plaintiff was under Dr. Gu's care; and (3) treatment subsequent to Plaintiff filing this lawsuit on May 23, 2022.

May 2019 to June 4, 2020:

Shortly after her transfer to CCWF in 2019, Plaintiff began seeking treatment for chronic rib pain, which included her submitting requests for chiropractic treatment to "put [her rib] back in [place]." (See Pl. Decl. at 31–32; ECF No. 64 at 103 (reporting chronic rib pain during initial medical intake appointment following transfer to CCWF); id. at 107, 114–18, 121 (CDCR 7362 sick call slips for chronic rib pain and/or "right rib out")).

On October 9, 2019, Plaintiff saw Dr. Martha Garcia, M.D., for complaints of "ongoing

---

[7] The discharge summary listed Plaintiff's medical problems as: "left knee joint pain, dental examination, dental caries, FOSS III, adjustment disorder with mixed anxiety and depressed mood, left sciatica, and digestive system disorder." (ECF No. 57-5 at 2 (internal medical codes omitted)).

[8] Dr. Gu objects to the chiropractic treatment records on relevancy, hearsay, and authenticity grounds. (ECF No. 67-3 at 2). The Court will address these objections, if necessary, in its analysis.

[9] The parties each submitted medical records that they consider pertinent to their summary judgment arguments. Because there is considerable overlap in the two sets of records, the Court has elected to set forth the medical evidence in chronological order rather than summarizing each set of records separately.

pain in the rib cage." (ECF No. 57-5 at 4; ECF No. 64 at 119–20). During this visit, Plaintiff told Dr. Garcia that her right fourth rib "became unstable" following a 2008 motor vehicle accident, and now periodically "comes out." (Id.) Plaintiff reported that prior to her arrest, she saw a chiropractor "every month to every 3 months" to have the fourth rib "popped . . . into place," and that she also underwent physical therapy to "help stabilize [the] rib." (Id.) On physical examination, Dr. Garcia noted "right rib palpable and prominent at sternocostal area." (Id.) Dr. Garcia submitted a referral to physical therapy and directed Plaintiff to use ibuprofen and topical capsaicin cream for pain management. (Id.)

On December 17, 2019, Plaintiff had her first physical therapy session, where she reported left knee pain as well as right-sided fourth "rib/sternum pain, shoulder pain and neck pain that stemmed from MVA [motor vehicle accident] back in 2008." (ECF No. 57-5 at 6). Specific to her rib pain, Plaintiff told the physical therapist that she had pain due to her fourth rib "being out" with the pain radiating to her right neck and shoulder. (Id. at 6–7). The physical therapist developed a treatment plan of one to two sessions of physical therapy per week for a period of five to six weeks. (Id. at 8).

Plaintiff's physical therapy treatment plan did not commence until approximately three months later, in March 2020.[10] (ECF No. 57-5 at 9–42). Plaintiff received physical therapy twice a week from March 9, 2020, through April 22, 2020. (Id.) These therapy sessions, however, focused solely on Plaintiff's left knee pain. (Id.) At the final session, the physical therapist noted that Plaintiff had made steady progress regarding her left knee and suggested that she "continue her therapy, with the focus of her treatment on her R [right] rib cage." (Id. at 41). The physical therapist recommended another round of physical therapy to address the right rib cage pain. (Id.)

On May 5, 2020, Plaintiff saw Dr. Garcia to follow-up on the completed physical therapy sessions regarding her left knee. (ECF No. 57-5 at 43; ECF No. 64 at 126). At that time, Dr. Garcia submitted a referral for the additional physical therapy sessions recommended by the physical therapist for Plaintiff's right rib cage pain. (ECF No. 64 at 265).

A few weeks later, on May 20, 2020, Plaintiff had her first physical therapy session for

---

[10] According to Dr. Feinberg, Plaintiff's medical records are silent as to the reason for the delay in starting the recommended physical treatment plan. (Dr. Feinberg Decl. ¶ 12). Dr. Feinberg speculates that the delay was "perhaps [due to] a physical therapist staffing change or unavailability." (Id.)

1    her right rib cage pain. (ECF No. 57-5 at 45–47). The physical therapy notes for that session

2    indicate that Plaintiff was able to complete the exercises with "good tolerance." (Id. at 47).

3    Plaintiff's subsequent physical therapy sessions were "postponed due to COVID-19 precautions"

4    according to a nurse progress note dated June 1, 2020. (Id. at 48).

5    June 4, 2020 to May 5, 2022:

6            On June 4, 2020, Plaintiff saw Dr. Gu for the first time. (ECF No. 57-5 at 49–51; ECF No.

7    64 at 130–31). During this visit, Plaintiff reported to Dr. Gu that she had chronic right rib pain.

8    (ECF No. 57-5 at 49). Plaintiff explained that she had a single physical therapy session the month

9    before, but was now doing home exercises because her remaining physical therapy sessions had

10   been temporarily stopped due to COVID-19 restrictions. (Id. at 49). Plaintiff also told Dr. Gu that

11   she had seen a chiropractor multiple times for her rib pain prior to incarceration, and she

12   specifically asked Dr. Gu to refer her to a chiropractor. (Id.) On physical examination, Dr. Gu

13   noted "right 3 rib to sternum joint slight bulging." (Id.) Dr. Gu informed Plaintiff that a

14   chiropractor referral was not indicated "per CDCR policy" and encouraged her to continue with

15   daily home exercises. (Id.) Dr. Gu also noted that Plaintiff "disagreed with [the] care plan" and

16   threatened to file a lawsuit. (Id. at 51).

17           In her declaration, Plaintiff states that Dr. Gu told her during the June 4th appointment

18   that he had "never heard of a rib coming out of place." (ECF No. 64 at 34). Plaintiff states that

19   she offered to have her pre-incarceration chiropractic records sent to CCWF for Dr. Gu's review,

     but "Dr. Gu stated, 'that's unnecessary' and expressed that he did not believe her." (Id.)

20           On August 17, 2020, Plaintiff saw Dr. Elizabeth Wasson, M.D., for complaints of right

21   upper back spasms induced by a poorly fitted prison issued bra. (ECF No. 57-5 at 52; ECF No. 64

22   at 137–39). During this visit, Plaintiff reported to Dr. Wasson that she had dislocated her right

23   fourth anterior rib in a motor vehicle accident in 2008, and since then, she had "managed

24   discomfort associated with this chronically dislocated rib through chiropractic care and physical

25   therapy." (Id.) Plaintiff also told Dr. Wasson that prior to the implementation of COVID-19

26   restrictions, she had been "working with physical therapy at CCWF in regards to this chronic

27   condition with symptom improvement." (Id.) On physical exam, Dr. Wasson noted that there was

28   "no obvious anterior rib deformity present with visualization or with palpation. No bruising or

significant pain with palpation noted involving any anterior ribs." (Id. at 53). Dr. Wasson prescribed lidoderm gel to treat the muscle spasms and directed CCWF prison staff to procure a correctly fitted bra. (Id.) As for Plaintiff's "[c]hronically dislocated right 4th anterior rib," Dr. Wasson documented that she would "place a consult to physical therapy to occur once onsite physical therapy services resume" after COVID-19 restrictions are lifted. (Id.)

Approximately two months later, on October 5, 2020, Plaintiff resumed physical therapy sessions for her right fourth anterior rib pain. (ECF No. 57-5 at 56). She had sessions twice per week through November 2, 2020. (Id. at 57–78). Plaintiff reported improvement and pain relief at the end of some of the sessions, but at other sessions, she reported continued pain. (See id. at 62 (Oct. 7, 2020 session where Plaintiff "felt fine with today's treatment, although having unexpected pain with lateral flexion stretches towards the right"); id. at 64 (Oct. 12, 2020 session where Plaintiff had "no complaints" and "reported feeling good after todays' [sic] treatment"); id. at 68 (Oct. 14, 2020 session where Plaintiff reportedly "felt her rib move during [the] session" but "felt fine after the treatment" and had "no worse pain afterwards"); id. at 72 (Oct. 26, 2020 session where Plaintiff "reported relief with manual therapy" and "felt good with her treatment"); id. at 74 (Oct. 29, 2020 session where Plaintiff reported "no improvement with her rib pain, . . . state[d] pain is the same and . . . reported increase in frequency of displacement of her rib").

Plaintiff was discharged from physical therapy on November 2, 2020, with the physical therapist noting that Plaintiff "made fair progress through her physical therapy," but was "still having the same pain on her R 4th rib, with intermittent subluxation reported." (ECF No. 57-5 at 77). The physical therapist advised Plaintiff to follow-up with her physician and suggested that she may require imaging to further evaluate her rib pain. (Id.)

On November 12, 2020, Plaintiff saw physician assistant Kelly Phanh for follow-up after completing physical therapy on her rib. (ECF No. 57-5 at 79–80; ECF No. 64 at 147–48). Plaintiff told Phanh that she had "been under [the] care of [a] chiropractor and PT prior to incarceration to stabilize her pain, and now that she has failed official PT here [at CCWF], she is now requesting to see Ortho." (ECF No. 57-5 at 79). Plaintiff denied "any change to her pain from the previous years" and she also denied having any difficulty performing activities of daily living. (Id.) On physical exam, Phanh observed "anterior chest with TTP right fourth rib region."

1    (Id. at 80). Phanh determined that a referral to orthopedics was not medically indicated at the
2    time. (Id.) She ordered x-rays of Plaintiff's right ribs. (Id.)

3          On November 16, 2020, x-rays of Plaintiff's right ribs were taken. (ECF No. 57-5 at 81).
4    The radiologist found "no acute cardiopulmonary abnormality or displaced rib fracture." (Id.)

5          Plaintiff saw Dr. Gu for the second time on January 20, 2021. (ECF No. 57-5 at 83–84).
6    Plaintiff reported that she had "chronic right upper rib area pain," that she frequently used
7    chiropractic treatment to help release the pain prior to her incarceration, and that her recent round
8    of physical therapy had not helped with the pain. (Id. at 83). Plaintiff again requested a referral to
9    a chiropractor. (Id.) Dr. Gu documented in his treatment note that he reviewed the November 16,
10   2020 x-ray results with Plaintiff and explained to her that her rib pain is a chronic condition and
11   that "[i]n general, we do not offer chiropractics for the chronic conditions." (Id.) He advised
     Plaintiff to continue "daily physical exercise to release pain and maintain [] function." (Id.)

12        Plaintiff's third appointment with Dr. Gu was approximately two months later, on March
13   4, 2021, during which Plaintiff again requested to see a chiropractor. (ECF No. 57-5 at 86–87;
14   ECF No. 64 at 153–55). Dr. Gu stated that "we do not offer" chiropractic services and he
15   recommended that Plaintiff continue taking the three medications previously prescribed for pain
16   management (Tylenol, ibuprofen, and a topical cream). (Id.)

17        Plaintiff's fourth appointment with Dr. Gu was on July 1, 2021, for right rib pain flare-up.
18   (ECF No. 64 at 159–61). On physical examination, Dr. Gu noted "right front 2end rib with
19   sternum area mild tenderness on palpation." (Id. at 160). Dr. Gu documented that he observed
20   Plaintiff sitting comfortably in the office despite "claim[ing] severe pain." (Id. at 161). Dr. Gu
21   once again advised Plaintiff that her rib pain was a chronic condition, and he recommended that
22   she continue her current care plan. (Id. at 160–61).

23        Plaintiff's fifth appointment with Dr. Gu occurred one month later on August 10, 2021.
24   (ECF No. 57-5 at 89–90; ECF No. 64 at 162–63). During this visit, Plaintiff reported that her
25   right upper rib area pain had gotten worse after she had been assigned a job in the kitchen. (ECF
26   No. 57-5 at 89). On physical exam, Dr. Gu noted a "focal prominent rib" in the right upper chest
27   near sternum area with "very minimal tenderness on palpation." (Id. at 90). Plaintiff requested
28   referrals for chiropractic treatment and orthopedics. (Id. at 89–90). Dr. Gu determined that an

"orthopedics consult is not indicated" for her rib pain. (Id. at 90). And as for her repeated request for chiropractic treatment, Dr. Gu explained to Plaintiff that chiropractic care "is an alternative therapy that is not offered based on the lack of evidence of effectiveness for her chronic pain." (Id. at 89; see also Dr. Gu Decl. ¶ 11). Dr. Gu advised Plaintiff to speak with her counselor about obtaining a change in job assignments. (ECF No. 57-5 at 89).

Plaintiff's fifth appointment with Dr. Gu was a week later, on August 17, 2021. (ECF No. 57-5 at 94; ECF No. 64 at 168–69). This visit primarily concerned Plaintiff's asthma, but Dr. Gu documented in his treatment note that he provided Plaintiff paperwork limiting her work assignments to those that "avoid right shoulder/arm repetitive movement" due to her chronic rib pain. (Id.)

On August 22, 2021, Plaintiff sought emergency medical treatment when she felt "her right upper rib pop[] out" after she pushed a food cart in the dining hall. (ECF No. 64 at 171). She was prescribed topical lidocaine cream and ibuprofen, and given a "3 days lay in." (Id.)

On September 30, 2021, Plaintiff saw Dr. Gu to request a lower bunk because "climbing [was] aggravating [her] rib." (ECF No. 64 at 178–79). On physical examination, Dr. Gu noted "mild tenderness on palpation in right upper rib." (Id. at 178). Dr. Gu assessed her rib pain as "soft tissue chronic pain" and explained that her condition did not qualify her for a lower bunk. (Id. at 179).

Plaintiff saw Dr. Gu for the final time approximately eight months later, on May 5, 2022.[11] (ECF No. 57-5 at 97). This visit concerned Plaintiff's allergic rhinitis, and no complaint of rib pain was addressed. (Id.) Approximately three weeks after this visit, Plaintiff filed this lawsuit on May 23, 2022. (ECF No. 1).

Treatment Subsequent to Filing Lawsuit:

On June 8, 2022, Plaintiff saw Dr. Michael Lee, M.D., with complaints of back and rib pain. (ECF No. 64 at 183–85). Plaintiff reported that she saw a chiropractor for manipulation prior to her incarceration, that she had physical therapy while incarcerated, and that she had been

---

[11] Based on the medical records Plaintiff provided, she had other appointments with Dr. Gu during the period he was her primary care physician. Because those appointments were for other medical issues, they are not relevant to the Court's analysis. (See, e.g., ECF No. 64 at 132 (June 24, 2020 appointment for asthma), id. at 134 (July 20, 2020 appointment for knee pain), id. at 140 (Sept. 25, 2020 appointment for asthma), id. at 156–57 (March 18, 2021 appointment for left shoulder cortisone injection)).

1  prescribed Tylenol and topical lidocaine cream for pain management on an as-needed basis. (Id.)

2  On physical exam, Dr. Lee observed: "Right anterior fourth costosternal junction visibly and

3  palpably anterior on exam with respect to others; right posterior fourth costovertebral joint and

4  surrounding tissues tender to palpation." (Id. at 184). Dr. Lee ordered x-rays of Plaintiff's

5  thoracic spine for further evaluation. (Id. at 185).

6        On July 18, 2022, x-rays of Plaintiff's thoracic spine were taken. (ECF No. 57-5 at 101).

7  A radiologist reviewed the images and found "no identified fracture or subluxation." (Id.; see also

8  ECF No. 67-7 at 2).

9        In 2023, Plaintiff saw Dr. Pardeep Kahlon, M.D, twice with complaints of rib pain. At her

10  April 14, 2023 appointment, Plaintiff told Dr. Kahlon that she has intermittent right fourth

11  anterior and posterior rib pain, "characterized as sharp pain with flare-ups of immobility every 3-

12  6 months due to pain which lasts from 2-7 days." (ECF No. 64 at 195). Plaintiff reported that the

13  rib pain was caused by subluxation, and that she needed a chiropractor to put the rib back in place

14  and physical therapy to stabilize the rib. (Id.) On physical examination, Dr. Kahlon noted that

15  Plaintiff's right "anterior ~ 4th rib notch palpated with pt grimacing however no movement noted

16  of bony prominence." (Id.) In his assessment, Dr. Kahlon noted that another provider, Dr. Garcia,

17  had observed Plaintiff pulling weeds from the ground "this whole week with improper form."

18  (Id.) Dr. Kahlon referred Plaintiff to orthopedics for further evaluation and management of her rib

   pain. (Id. at 196).

19        Plaintiff next saw Dr. Kahlon on August 14, 2023, during which she specifically requested

20  a referral to chiropractic care. (ECF No. 67-7 at 3). Dr. Kahlon documented in his treatment

21  notes: "Pt also wants me to check on her Chiropractor records to show that she underwent

22  services with them in the past and wants me to put in a referral for Chiropracter [sic] services . . .

23  Pt advises me to put in an order for Chiropractor services into the chart to save my own bottom in

24  a lawsuit pt is preparing." (Id.) Dr. Kahlon determined that chiropractor services "are not

25  medically indicated at this time as [Plaintiff] is currently asymptomatic." (Id.)

26        On August 25, 2023, Plaintiff had a telemedicine referral appointment with an orthopedic

27  surgeon Dr. Michael Brown, M.D. (ECF No. 64 at 202–03). Dr. Brown recommended that

28  Plaintiff "be seen by a back specialist to evaluate [the area at issue] to see if this is rib subluxation

or if it is back related with a thoracic disc that could be causing radiating pain around to the front[.]" (Id. at 202). Dr. Brown also ordered repeat thoracic vertebrae and rib x-rays. (Id. at 203). Dr. Brown recommended that in the meantime, Plaintiff be "seen by a chiropractor to do manipulation which has given her relief for at least a short time in the past." (Id.)

On May 2, 2024, a contract medical provider at CCWF, Dr. Bankole Asebiomo, M.D., referred Plaintiff to a spine specialist as per the orthopedic surgeon's recommendation. (ECF No. 64 at 208–09).

An x-ray of Plaintiff's lumbar spine dated July 10, 2024 showed "no evidence of dynamic motion" and "mild L5-S1 discogenic degenerative changes." (ECF No. 64 at 210). An x-ray of Plaintiff's thoracic spine dated September 23, 2024 showed "mild degenerative changes within the thoracic spine without evidence of focal neural compromise." (Id. at 212).

On September 30, 2024, Plaintiff had an in-person appointment with an orthopedic spine specialist. (ECF No. 64 at 213–15). On physical examination, the specialist noted there was "no obvious dislocation of the rib and sternum." (Id. at 213). He assessed that spine surgery was not medically indicated, and he documented in his treatment note that Plaintiff "would like to see a chiropractor for adjustments for her rib disorder." (Id. at 214).

On November 26, 2024, Dr. Asebiomo referred Plaintiff to a chiropractor "as suggested by Ortho." (ECF No. 64 at 217; see also Declaration of Dr. Akinwumi Ola ("Dr. Ola Decl."), ECF No. 67-4 at ¶ 4). The corresponding request for service for chiropractic care noted that orthopedics recommended referral to chiropractor "as desired by patient." (ECF No. 67-5 at 2).

In his declaration dated January 10, 2025, CCWF chief medical executive Dr. Ola provided the following information regarding the status of the chiropractor referral:

> To ensure uniform and efficient patient care, all Requests for Services are reviewed by an inmate-patient's institutional Utilization Management Committee. Because chiropractic services is not a specialty listed in our system, it is considered a "specialized service unlisted" in CCHCS's medical services for patients. As the request for chiropractic services is not routinely requested and may not be prescribed without further authorization, it was referred to the CCHCS Statewide Medical Authorization Team (SMART) Committee at CDCR Headquarters. The SMART Committee evaluate the benefit of this request based on evidence-based clinical decision support criteria.
>
> As of the date of my declaration, [Plaintiff's] referral has neither been approved or denied by the SMART Committee.

1    (Dr. Ola Decl. ¶¶ 5–6).

2    ### iii.  Chiropractic Records Sent to CCWF in 2023

3    Almost a year after she commenced this lawsuit, Plaintiff requested that chiropractor

4    Joshua Bray, D.C. release her medical records to CCWF regarding chiropractic care he provided

5    to her from April 2010 until her arrest. (ECF No. 57-5 at 111). On April 20, 2023, Bray

6    Chiropractic sent a two-page fax to CCWF, consisting of a cover letter and Plaintiff's chart note

7    from her last visit to the clinic on January 23, 2018. (Id. at 114). The cover letter indicated that

8    Bray treated Plaintiff "for 18 visits over four and a half years for similar flare-ups of the same

9    chief complaint symptoms. This [chart] note details the affected regions and the musculoskeletal

10   treatments (myofascial release, CMT chiropractic manipulative therapy, and exercise therapy)

11   rendered to help [Plaintiff] control her symptoms." (Id. at 113). As to the chart note itself, it stated

12   that Plaintiff's chief complaint was "posterior cervical (neck), upper thoracic, mid thoracic and

13   right sacroiliac [pain]." (ECF No. 57-5 at 114). The objective findings section of the note stated,

14   among other findings, that Plaintiff had "extraspinal restrictions/subluxations" in the "right T4

15   rib, right T5 rib, and left T3 rib." (Id.) The primary treatment administered during the visit was

16   myofascial release and "[d]iversified-[c]hiropractic [m]anipulative [t]herapy (CMT)" in multiple

17   areas including the "right T4 rib and right T5 rib." (Id.) At the end of the visit, the chiropractor

18   advised Plaintiff to continue with a home exercise program. (Id.)

### iv.  Plaintiff's Remaining Summary Judgment Evidence

19   Plaintiff's remaining summary judgment evidence consists of three health care grievances

20   that she submitted regarding her rib pain while incarcerated at CWCF. (ECF No. 64 at 219–38).

21   She also includes grievances and requests for accommodation that she submitted concerning

22   prison issued undergarments. (Id. at 242–56).

23   Plaintiff also submitted an "Inmate Assignment History" form, which appears to show her

24   prison work assignments. (ECF No. 64 at 239–41).

### v.  Dr. Feinberg's Expert Opinion

25   In his declaration, Dr. Feinberg offered the following opinion based on his review of

26   Plaintiff's medical records and his training and experience:

27   It is my professional opinion that Dr. Gu chose a course of treatment for
     [Plaintiff's] complaints of rib pain that was medically acceptable under the

28

circumstances. There is no evidence that Dr. Gu ever refused to review [Plaintiff's] relevant medical records. Dr. Gu clearly reviewed physical therapy documentation and x-ray reports as they pertained to [Plaintiff's] complaints of rib pain. The medical records from jail available to Dr. Gu included a number of medical conditions, but no mention of any rib problem. The outside chiropractor records discussed in the above paragraph did not become available in the CCHCS medical records until April of 2023, almost one year after Dr. Gu's final appointment with [Plaintiff] and six months after the First Amended Complaint was filed. These records do not confirm a diagnosis of subluxation of [Plaintiff's] right fourth rib, as no diagnoses are listed. However, even if they or earlier chiropractic notes did include such a diagnosis, that does not mean that such a condition continued to exist during the time [Plaintiff] was under Dr. Gu's care, or that chiropractic treatment was then or continued to be the appropriate treatment going forward. There is no evidence that [Plaintiff] had a rib subluxation while under Dr. Gu's care, with multiple imaging studies reporting no rib displacement or subluxation. Nor is there evidence that [Plaintiff] had any medical condition necessitating chiropractic treatments while under Dr. Gu's care.

Moreover, the concept of subluxation, as diagnosed and treated by a chiropractor, was already no longer felt to have a legitimate place in modern chiropractic care during the relevant time period. A 2018 article from the journal Chiropractic & Manual Therapies[] regarding the teaching of subluxation in chiropractic degree programs, concluded that such "[u]nscientific terms and concepts should have no place in modern education, except perhaps in historical context. Unless these outdated concepts are rejected, the chiropractic profession and individual chiropractors will likely continue to face difficulties integrating with established health care systems and attaining cultural authority as experts in conservative neuro-musculoskeletal health care."

(ECF No. 57-3 at ¶ 30 (footnote omitted)).

### D.    Discussion

#### i.    Serious Medical Need

"A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (internal citation and quotation marks omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment." Id.

Although Dr. Gu references Plaintiff's imaging results, which showed no evidence of a rib

fracture or subluxation, in his briefing, see ECF No. 67 at 7–8, he does not dispute for purposes of summary judgment that Plaintiff's chronic rib pain was a serious medical need. (See ECF No. 57-1 at 16 (directing arguments to second prong of deliberate indifference analysis, i.e. that Dr Gu "was not deliberately indifferent to [Plaintiff's] medical need").

Notwithstanding Dr. Gu's position, Plaintiff asserts that she had a serious medical need based on (1) her pre-existing rib condition that she received chiropractor care and physical therapy for prior to her arrest, (2) the various rib-related findings noted during physical examinations conducted by Dr. Gu or other prison medical providers, (3) Dr. Gu's assessment that she had chronic rib pain, (4) the physical therapy sessions she had at CCWF for her rib pain, and (5) the subsequent specialty referrals (e.g., orthopedics, spine specialist) that she received after filing this lawsuit. (See ECF No. 64 at 14).

Based on the above, the Court finds that Plaintiff has presented a triable issue of fact that her chronic rib pain was a serious medical need during the time period she was under Dr. Gu's care at CCWF.

### ii.  Dr. Gu's Response to Plaintiff's Serious Medical Need

As to the second prong of the Eighth Amendment deliberate indifference analysis, the Court concludes that Plaintiff has failed to raise a genuine dispute of material fact as to whether Dr. Gu's response to Plaintiff's serious medical need was deliberately indifferent, for the reasons discussed below.

Dr. Gu has met his burden of demonstrating the absence of a genuine issue of material fact as to whether he failed to treat Plaintiff's condition. The undisputed evidence shows that Dr. Gu addressed Plaintiff's complaints of rib pain throughout the time period she was under his care. At multiple appointments, Dr. Gu reviewed Plaintiff's subjective complaints regarding her rib pain, reviewed her prison medical file and relevant imaging results, and conducted a physical examination before he assessed that she had chronic rib pain and advised her to follow a treatment care plan that consisted of home exercises (while COVID-19 restrictions were in place) and taking medication for pain management on an as-needed basis. (See, e.g., ECF No. 57-5 at 49–51 (June 2020 appointment where Dr. Gu conducted physical examination, reviewed

1    Plaintiff's physical therapy notes, and advised her to do daily home exercises for rib pain); id. at

2    83–84 (January 2021 appointment during which Dr. Gu reviewed x-ray results and advised

3    Plaintiff to continue with daily physical exercises to relieve pain); id. at 86–87 (March 2021

4    appointment during which Dr. Gu recommended that Plaintiff continue with prescribed oral and

5    topical medications for rib-related pain management); ECF No. 64 at 159–61 (July 2021 visit

6    where Dr. Gu conducted physical examination and recommended that she continue with current

7    care plan). Dr. Gu also provided Plaintiff paperwork limiting her prison work assignments to help

8    minimize her chronic rib pain. (ECF No. 57-5 at 94).

9        Dr. Gu has also met his burden of demonstrating the absence of a genuine issue of

10   material fact as to whether his course of treatment was medically unacceptable under the

11   circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. Dr.

12   Gu has submitted Dr. Feinberg's unrefuted expert opinion that Dr. Gu chose a course of treatment

13   for Plaintiff's chronic rib pain that was medically acceptable under the circumstances. (See Dr.

14   Feinberg Decl. ¶ 30). Additionally, Dr. Gu has presented records indicating that all the medical

15   providers who evaluated Plaintiff during the same time period as Dr. Gu recommended a similar

16   course of treatment – i.e., that she undergo physical therapy (or home exercises while COVID-19

17   restrictions were in place) and take pain medications or use topical creams for pain management.

18   See, e.g., ECF No. 57-5 at 4 (October 2019 visit during which Dr. Garcia recommended Plaintiff

19   undergo physical therapy and use ibuprofen and topical capsaicin cream); id. at 43 (May 2020

20   visit during which Dr. Garcia submitted referral for additional physical therapy); id. at 53 (August

21   2020 visit during which Dr. Wasson prescribed lidoderm gel and indicated that she would refer to

22   onsite physical therapy once COVID-19 restrictions were lifted). These providers did not find that

23   chiropractic care was medically indicated for Plaintiff's chronic rib pain. (Id. at 4, 43, 52).

24       The Court thus turns to Plaintiff's evidence to determine if she has come forth with

25   evidence from which a jury could reasonably render a verdict in her favor as to whether Dr. Gu

26   acted with deliberate indifference.

27       In opposition, Plaintiff relies on her pre-incarceration chiropractic treatment records.

28   However, nothing in those records suggests that Dr. Gu's chosen course of treatment was

1    medically unacceptable. Plaintiff's earliest chiropractic records from 2008 through 2010, which

2    were never provided to CCWF, are handwritten and largely illegible, see ECF No. 64 at 65–79,

3    and Plaintiff fails to point to anything in those records or the corresponding billing statements

4    suggesting that chiropractic treatment was the only method for treating her rib pain, see id. at 84–

5    96. The earlier records also include an orthopedic consultation from 2009, which does not include

6    any diagnosis of rib pain or subluxation, see id. at 82.[12] As for the January 2018 chart note from

7    Bray Chiropractic, which Plaintiff sent to CCWF nearly a year after Dr. Gu last treated her, the

8    note reflects that Plaintiff received chiropractic manipulative therapy on that date, but also

9    suggests that other treatment methods were available to treat her condition – namely, a home

10   exercise program to improve thoracic and rib cage flexibility. (See ECF No. 64 at 98).

11       Plaintiff also presents evidence that Dr. Gu made statements that were dismissive of her

12   complaints. (See ECF No. 64 at 34 (stating that Dr. Gu told her during June 4, 2020 appointment

13   that he had "never heard of a rib coming out of place" and that when she offered to send her pre-

14   incarceration records, "Dr. Gu stated, 'that's unnecessary' and expressed that he did not believe

15   her")). However, assuming that Dr. Gu made such statements, they do not indicate that he in fact

16   ignored her complaints or chose a course of treatment that was medically unacceptable. Plaintiff

17   does not deny that Dr. Gu addressed her complaints as indicated above, despite any dismissive

18   comments he may have made. See Tilei v. California Dep't of Corr. & Rehab., No. 21-55327,

19   2022 WL 16946600, at *1 (9th Cir. Nov. 15, 2022) ("Tilei's allegations that the doctors were

20   rude and dismissive are similarly irrelevant because they do not show that the treatment was

21   inadequate.").

22       Moreover, these alleged statements are consistent with Dr. Feinberg's expert opinion that

23   "the concept of subluxation, as diagnosed and treated by a chiropractor, was already no longer felt

24   to have a legitimate place in modern chiropractic care during the relevant time period." (Dr.

25   Feinberg Decl. ¶ 30). In other words, even if Dr. Gu questioned Plaintiff's belief that she needed

26

27   ─────────────
     [12] The orthopedist diagnosed Plaintiff with acute cervicothoracic and lumbosacral musculoligamentous
     spinal sprain injury relative to her 2009 motor vehicle accident, paraspinal sprain, right shoulder sprain,
28   mechanical cephalalgia, and insomnia. (ECF No. 64 at 82).

1   chiropractic care for her unstable rib, such comments would indicate a difference of opinion

2   between Plaintiff and Dr. Gu regarding the appropriate course of treatment.

3         Again, to establish that a difference of opinion rises to the level of deliberate indifference,

4   Plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the

5   circumstances,' and was chosen 'in conscious disregard of an excessive risk to [her] health.'"

6   Toguchi, 391 F.3d at 1058 (quoting Jackson, 90 F.3d at 332). Here, Plaintiff does not present any

7   medical evidence that Dr. Gu's course of treatment was medically unacceptable under the

8   circumstances. The closest that Plaintiff comes to presenting such evidence are medical records

9   indicating that Dr. Asebiomo recently submitted a request for service in November 2024 for

10  chiropractic care. However, nothing in that submission or the medical records related to it

11  indicate that Dr. Gu's prior course of treatment was medically unacceptable. On the contrary, the

12  records indicate that the request for service was issued "as desired by patient" and has not yet

13  been approved. (See Dr. Ola Decl. ¶ 6; ECF No. 67-5 at 2). Moreover, other records from after

14  the filing of this lawsuit indicate that Plaintiff's subsequent treating providers continued to

15  determine that a chiropractor referral was not medically indicated. (See ECF No. 67-7 at 3 (Dr.

16  Kahlon determining in August 2023 that chiropractor services were not medically indicated

17  because Plaintiff was asymptomatic)).

18        Plaintiff also asserts that Dr. Gu's refusal to review her pre-incarceration chiropractic

19  records constitutes deliberate indifference. (See ECF No. 64 at 5). However, Dr. Gu reviewed

20  multiple medical records of Plaintiff's rib in the course of his treatment reflecting Plaintiff's

21  present medical condition at the time of Dr. Gu's care. For example, imaging studies taken at

22  CCWF did not show a rib fracture or subluxation. (See e.g., ECF No. 57-5 at 81 ("no acute

23  cardiopulmonary abnormality or displaced rib fracture" found on November 2020 right rib x-

24  rays), id. at 101 ("no identified fracture or subluxation" found in July 2022 thoracic spine x-ray).

25  In light of these more recent records, it was not deliberate indifference to fail to obtain even

26  earlier medical records. Put another way, Plaintiff has failed to submit evidence that it was

27  medically unacceptable to rely on more recent medical records of Plaintiff's condition without

28  obtaining earlier records. Additionally, it is undisputed that Plaintiff did not have her chiropractic

records released to CCWF until almost a year after her last visit with Dr. Gu. Thus, this is not a situation where Dr. Gu had possession of, but deliberately ignored, available medical records.

Based on the above, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact that Dr. Gu's response to her serious medical need was deliberately indifferent. Accordingly, the Court recommends granting Dr. Gu's motion for summary judgment on this basis as no reasonable juror could conclude that Dr. Gu was deliberately indifferent to Plaintiff's serious medical need in violation of the Eighth Amendment.[13]

**V.    CONCLUSION AND RECOMMENDATION**

Accordingly, the Court RECOMMENDS:

1.  Plaintiff's Motion to Exclude Dr. Feinberg's Expert Opinion (ECF No. 64 at 46–61) be DENIED;

2.  Dr. Gu's Motion for Summary Judgment (ECF No. 57) be GRANTED; and

3.  The Clerk of Court be directed to enter judgment in favor of Defendant Wei Gu and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\
\\\
\\\
\\\
\\\
\\\

---

[13] In light of this recommendation, the Court declines to reach Dr. Gu's remaining arguments (qualified immunity and availability of punitive damages).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 1, 2025**                    /s/ Erica P. Grosj

UNITED STATES MAGISTRATE JUDGE